Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the hustings court of the city of Manchester, rendered on the 20th day of October, 1876, convicting the plaintiffs in error on an indictment found against them in the said court, charging them with a nuisance in erecting and continuing an obstruction of an ancient and common highway and public street in the said city of Manchester. There was a plea of not guilty in the case, on which issue was joined, which was tried by a jury. A verdict of guilty was found against the accused, and a fine of one dollar each was assessed against them. Judgment was rendered accordingly, and for the abatement of the nuisance. To this judgment the plaintiffs in error applied to a judge of this court for a writ of error, which was accordingly awarded. Sundry errors in the said judgment are assigned in the petition for the said writ, founded on sundry bills of exeception, which were taken by the said plaintiffs in error in the course of the proceedings in the said case, which bills of exception and assignment of error thereon we will notice in their order:
1. The first bill of exceptions stated, that upon the calling of the cause the defendants moved for a continuance of the same upon the ground that an injunction was awarded on the 25th day of July, 1876, to restrain the city of Manchester from removing or in any manner interfering *with the property which is charged in the indictment as being an obstruction to the public highway; and in support of said motion the defendants offered in evidence the record in the said injunction suit now pending in the hustings court of said city, which record is set out in the said bill of exceptions. In the injunction bill the complainants claim to be the joint owners in fee of a house and lot in the town of Manchester, fronting on Porter street 264 feet, which lot embraces nearly two acres of land. The house situated on said lot is an old family homestead, which was the birthplace and residence, during his life, of Samuel .Taylor, through whom the complainants claim title. They say that they and those through whom they claim have been in the actual possession of the said property, certainly, for about seventy years — probably not less than a century; that the common council of the town, acting through A. R. Johnston, its city engineer, and other agents, are now threatening to enter upon the aforesaid premises, take possession and destroy the front yard and a part of the garden, and pull down the front enclosure and part of the dwelling-house, or at least the greater part of the front portico, under the pretence of. widening or opening Porter street in the said town, and that in carrying this purpose into effect the value of the homestead will be materially lessened, if not absolutely destroyed, and irreparable damage done to the freehold. They therefore pray for an injunction, which was awarded as aforesaid. Which motion for a continuance the court overruled, and the defendants excepted to the action of the court in that respect. That such was the action of the court is the first assignment of error in this case.
We are of opinion that the court did not err in overruling the said motion for a continuance. A street of a city is a public highway, the obstruction of which is an ^indictable offence. On the trial of an indictment for such an offence, the questions, whether the locus in quo be a public highway, and whether the same be obstructed by the accused in the manner charged in the indictment, are questions of law and fact which properly arises for decision. And such trial cannot of right be delayed by reason of the pendency of a civil suit, such as is the chancery suit in the first bill of exceptions mentioned. There might be peculiar circumstances sufficient to induce and warrant the court, in which a prosecution for such an offence is pending, to delay the trial of the prosecution for a reasonable time on account of the pendency of a civil suit involving the same questions involved in the criminal prosecution; but it does not appear that such circumstances existed in tnis case; and if any case this court would reverse the judgment of an inferior court for refusing a continuance in such a case, certainly the reasons for doing so ought to be very strong. Indictment is the appropriate remedy for a nuisance in a public highway, and generally, if n'ot always, the questions involved in a charge of such an offence can be decided in that way, at least, as well as, if not better, than in any other. In a suit inter partes, such as is the injunction suit aforesaid, the decision might be upon grounds which ought not to affect the public at large in their right to the use of the highway.
2. The second bill of excepttions states “that upon the trial of the cause, The Commonwealth offered to introduce in evidence the report of the case of Mayo v. Murchie, as contained in the third volume of Munford’s Virginia Reports from page 358 to 417, (it having been admitted by the defendant’s counsel that the original record above referred to was destroyed by fire at *605 the close of the late war), the counsel for The Commonwealth stating that the purpose of introducing this evidence *was to show that such a map as that mentioned in the case above referred to as Watkins’ map, actually existed, and was in the papers of the above cause; and thereby to lay a foundation for the introduction, as further evidence in this cause, a map of Manchester, by the clerk of the superior court of chancery for the Richmond district. Wherefore the defendants moved the court to exclude from the jury the report so offered in evidence; which motion of the defendants the court overruled, upon the ground that it was a public record; and the defendants excepted to the action of the court in that respect. Such action of the court is the second assignment of error in this case.
We are of opinion that the court did not err in overruling the defendant’s motion to exclude from the jury the said report. By an act of the legislature of Virginia, passed in November, 1769, it was recited that it had been represented to the then present general assembly, that the honorable William Byrd had lately laid out a parcel of his lands at Rocky Ridge, at the falls of James river, in the county of Chesterfield, in lots and streets for a town, and had made sale of most of the said lots of divers persons, some of whom had since settled and built thereon, and that it would .tend to the more speedy improvement and settling the same, if the freeholders and inhabitants thereof should be entitled to the like privileges enjoyed by the freeholders and inhabitants of the other towns in the said colony; and it was enacted that the said parcel of land should be, and the same was by the said act constituted, appointed, erected and established a town in the manner it was already laid out in lots and streets, agreeable to a plan and survey thereof made by Benjamin Watkins, surveyor of the. county of Chesterfield, containing the number of 312 lots, as by *the said plan and survey, relation being thereto had, might fully and at large appear, and should be called and known by the name of Manchester; and that the freeholders of the said town should forever thereafter enjoy tile same rights and privileges which the freeholders of other towns erected by acts of assembly in said colony had and enjoyed. And nine persons named in the said act were, thereby appointed trustees of the said town, with the powers and for the purposes (herein mentioned. 8 Hen. St. at Large, p. 421.
The original Watkins’ map referred to in the said act, having been lost or destroyed, according to an admission which seems to have been made in this cause, The Commonwealth sought to introduce, as secondary evidence in the cause, a map purporting to be, and certified as a map of the town of Manchester by the clerk of the superior court of chancery for the Richmond district, and to lay a foundation for the introduction of said evidence, offered to introduce in evidence the report of the case of Mayo v. Murchie. as aforesaid, stating that the purpose of introducing this evidence was to show that such a map as that mentioned in the report of the case above referred to as Watkins’ map, actually existed, and was in the papers of the said "case, (it having been admitted by the defendant’s counsel that the original record in that case was destroyed by fire at the close of the late war).
That case of Mayo v. Murchie is a very important and elaborate case, which appears from the report to have been a decision of this court at the October term thereof in 1811; but it must have been decided at a later day, as it appears to have been argued in December, 1812, and again in December, 1813. It was an appeal from a decree of Chancellor Taylor, made in May, 1807, in a suit brought in the superior court of chancery for the Richmond district, by John Murchie, surviving trustee *of the town of Manchester, against John Mayo and others. The complainant charged in his bill in said suit, “that in the year 17 — , Colonel William Byrd proposed to found the said town of Manchester by way of lottery; and agents were appointed by him and his trustees for superintending the laying off and bounding of the same; that the said agents proceeded to execute the business confided to them; and in making out the boundaries of the town, they expressly declared and set apart the slip of land which lies between James river and the lots of said town, near what is now called Mayo’s bridge, as part of the said town, to be annexed thereto, and held by the inhabitants thereof as a common forever; and the same hath been so held and enjoyed by the inhabitants of the said town ever since,” &c., &c.; “that all these facts were well known to - Mayo, who nevertheless, for a trifling consideration, purchased the said Byrd’s right to the said slip of land, and obtained a deed therefor (although the. same was then in the possession of the said town), from him and two of his trustees, without any warranty,” &c.; and that John Mayo, devisee of the said - Mayo, “had commenced an action of ejectment against the complainant as trustee of the said town, in the Richmond district court, and threatened to turn him and the said inhabitants out of possession, notwithstanding their equitable title aforesaid.” The prayer of the bill, therefore, was that John Mayo be enjoined from all further proceedings in his said action; that a conveyance of the legal title to said slip be made to the complainant as trustee for the said town; that he and the inhabitants of said town be quieted in the possession thereof, and for general relief.
John Mayo filed his answer to the said bill; sundry depositions were taken in the suit, and a decree was rendered by the chancellor in conformity with the prayer of *the bill. That decree was substantially affirmed by this court, after the case had been twice argued in it by the ablest counsel on both sides. The three *606 judges' of the court, Coalter, Roane and Fleming, pronounced their opinions seria-tim. It woujd appear from the opinion of Judge Roane, that Watkins’ survey was not itself in the record, as he says in brackets: “[for the survey itself is not before us.]” But the contrary would rather appear from the opinion of Judge Fleming, who seems to have devoted special attention to the merits of the case and the evidence therein. “Tl)is being a cause of much expectation and great interest to the contending parties,” he says at the commencement of his opinion, “and having been argued with great ability on both sides, the court bestowed on it peculiar attention and deliberation; though much of what I had to remark on the subject, especially respecting the capacity of the appellee to sue, and the want of parties (the only points on which I ever doubted), has been ' anticipated and ably discussed by my brother Roane. I shall therefore confine myself principally to the merits of the cause, and thére being a division of the court, shall, as the ground of my own opinion, take the liberty of briefly slating the origin, foundation and establishment of the town of Manchester.” And this he proceeds quite fully to do. After referring to the act of 1769, establishing the town of Manchester, and reciting a portion thereof, including that which relates to the plan and survey of said town, made by Benjamin Watkins, surveyor of Chesterfield county, he uses this language: “When we cast our eyes on the plan and survey of the town referred to in 'the act of assembly, it appears to extend upwards of half a mile parallel with the river, between which and the canal mentioned in the proceedings,! lies the narrow slip of land now the -subject of controversy,” &c.
*The original plan and survey of Watkins having been destroyed or lost,' and also the original record in the suit from the decree in which the appeal in Mayo v.. Murchie was taken, we .think the report of that case, as contained in the third volume of Munford’s Va. Reports, from page 358 to 417, was admissible, as secondary evidence, for the purpose for which it was offered. 1 Greenleaf on Evidence, § 509, and cases cited in note 5; Id. § 84, and note 2 and books and cases therein cited. That report strongly tends to show that such a map as that mentioned therein, to-wit: Watkins’ map, actually existed, and was in the papers of the cause; or if it did not exist, and had been lost or destroyed when the suit was brought, then that a copy of said plan and survey, or proof of their contents, was in the said papers.
3. The third bill of exceptions states: “That upon the trial of the cause The Commonwealth offered as evidence copies of two maps, one accompanying and being a part of a deed from Tasleton Sanders to William McKensie, dated 10th day of August, 1816, recorded in Chesterfield county court clerk’s office, in' D. B. 21, page 141, and the other attached to a deed from Myers, &c., to Whitehead and als., dated January 3rd, 1847, recorded in Chesterfield County court clerk’s office, D. B. 37, page 101, which two maps are in the following words and figures, to-wit:” (then follows the maps, surveyor’s and clerk’s certificates) “for the purpose of ascertaining the scale and verifying the map heretofore offered in evidence as a plat of the town of Manchester, which said last mentioned map is signed by the clerk of the superior court of chancery for the Richmond district, and is the one referred to and embraced in the defendants’ second bill of exceptions. The defendants, by their counsel, objected to the' introduction of the maps as evidence, upon the ground that neither the aforesaid deeds nor the maps *which accompany the same, or a part thereof, is competent evidence in this cause. Whereupon the court overruled said objection and allowed said maps to be offered as evidence for the purpose aforesaid, but for no other.” The defendants excepted to the action of the court in that respect; which action of the court is the third assignment of error in this case.
We are of opinion that the court did not err in allowing “said maps to be offered as evidence for the purpose aforesaid, but for no other.”
Watkins’ map, referred to in the said act of 1769, more than a hundred years before the trial of this cause, had, long before such trial, been - lost or destroyed, and a map, purporting to be a map of the town of Manchester, and certified as such by the clerk of the superior court of chancery for the Richmond district, was sought to be introduced by the Commonwealth as secondary evidence of" the contents of said Watkins’ map. Upon the question whether the former is in fact a copy of the latter map, the copies of the two maps set forth in the third bill of exceptions were admissible evidence for the purpose therein mentioned. They were made, many years before the trial of the cause, of portions of the said town of Manchester, and were annexed and recorded with deeds whereby such portions or parts thereof were conveyed by the owners to purchasers from them respectively. 1 Green-leaf on Evidence, §§ 139, 145, and cases cited in the notes to those sections, especially Penny Pot Landing, &c., v. City of Philadelphia, 16 Penn. St. R. 79.
4. The fourth bill of exceptions states that at the trial of the cause, the Commonwealth having first proven by a witness, C. C. McRae, that Dr. Samuel Taylor, who is referred to in the extracts thereinafter mentioned, was the owner, at the time of the proceedings therein mentioned, of the lots of land Nos. 163 and 177 in the plan *of Manchester, fronting on the north line of Porter street, between Ninth and Tenth streets, offered in evidence an extract from the minutes of the board of trustees of the town of Manchester, and certain other proceedings of the said board, of which the said Taylor was a memeber, in regard to what is called the Percival survey of the said town, which was then, to-wit: in December, 1855, in progress (which *607 said extract and other proceedings are set out in the said bill), for the purpose of showing Dr. Samuel Taylor’s connection with the said Percival survey (the defendants claiming to have derived the property, which is charged in this case to be an obstruction of the public highway and a nuisance, from and under the said Dr. Taylor). And the defendants moved the court to exclude from the jury said extract and other proceedings, but the court decided to admit the same, and the defendants excepted to such action of the court; which action of the court is the fourth assignment of error in this case.
We are of opinion that the court did not err in admitting the said extract and other proceedings as evidence in the case. The admissions of Dr. Taylor, as trustee in regard to his own individual interest, would bind himself individually, and would bind all who might afterwards claim as volunteers under him, the property in regard to which the admission may have been made. What ought to be the effect of such evidence, was a question which the court did not decide, and was not called on to decide. The only-decision was that it was admissible evidence; and we think it was.
5. No error is assigned on the matter of the fifth bill of exceptions, and we think that none could have been well assigned thereon. No further notice need therefore be taken thereof.
*6. The sixth bill of exceptions states that upon the trial of this cause, evidence was introduced tending to prove that the property charged in the indictment as constituting an obstruction, is comprised within Porter street in the town of Manchester; evidence was further introduced, tending to prove a dedication to and acceptance of Porter street by the house of bur-gesses, and by the city of Manchester; evidence was further introduced, tending to show that the defendants, and those under whom they claim, have been in the actual possession of, and had under inclosure the property aforesaid, charged as constituting an obstruction, claiming it as their own for a period of fifty or sixty years; whereupon the defendants’ counsel asked the court to give the following instructions to the jury, to-wit:
1st. The corporation of Manchester, in its private character as owner and occupier of lands and appurtenances, is regarded in the same light as an individual owner and occupier, and must be dealt with accordingly.
3d. In order to find the defendants guilty, the jury must be satisfied from the evidence that there was a dedication to and acceptance by the city of Manchester of the street known as Porter street, and that the prop-ertv owned by the defendants and claimed to be an obstruction, is part of that street as so dedicated and accepted; and even though there was such dedication and acceptance, if the jury believe from the evidence that the defendants and those through whom they claim, have had in their actual possession and inclosure, claiming it as their own, the property referred to in the indictment as constituting an obstruction for a period of forty or fifty years last past, then they must find a verdict of not guilty.
But the court gave the jury the first of said instructions, and refused to give the second.
*The Commonwealth then asked the court to give the following instructions to the jury:
1. That if they believe from the evidence that William Byrd laid off the land comprised within the limits of the town of Manchester into lots and streets, and made a map of the town so laid off, showing the lots and streets, and that lots were sold by him with reference to such map, all the streets designated on said map were thereby immediately and irrevocably dedicated to the public, and the public have a right to have the streets, as designated on said map, throughout their entire length and width, thrown open forever and kept free from any and all encroachments or obstructions.
3. That any substantial encroachments upon, or obstruction of, a public highway or street, is a public nuisance which no length of time will legalize or render lawful, and the fact that such encroachments or obstructions have been maintained and continued for a long time, it matters not how long, does not operate as a bar to the right of the public to have the nuisance abated or the encroachments and obstructions removed, nor to give the accused the right to continue or keep such obstructions and encroachments in the highway or street. And if the jury believe from the evidence that Porter street was originally laid out and dedicated to the public by William Byrd as it now runs, and within its present boundary lines, as shown by the map made in this case by A. L,. Johnson, under the order of this court, and that the same has been obstructed by the defendants as charged in the indictment, then they must find the defendants guilty.
3. That the act of the house of burgesses, passed November, 1769, establishing the town of Manchester as laid off into lots and streets, was an acceptance on the *part of the then colony of Virginia of the streets thus dedicated to the public.
Which said instructions asked for by the Commonwealth were given.
To which opinion of the court refusing to give the second instruction asked for by the defendants, and giving the three instructions asked for by the Commonwealth, the defendants excepted; and that exception is the subject of the fifth and last assignment of error.
We do not think there is any error in the judgment of the court in regard to the instructions asked for on either side. The first instruction asked for by the defendants was given, and properly so; but of course they do not complain of that action of the court. The second was properly refused. A valid dedication of a street to the public use, perfected by acceptance, as the in *608 ■struction supposes, makes it a highway, an unlawful obstruction of which is not legalized by lapse of time. Nullum tempus óccurrit regi, applies in this state to the Commonwealth, as it does in England to the king. The three instructions asked for by the Commonwealth were properly given by the court. There can be no doubt or difficulty in this case, as to the facts, that a valid dedication was made by Colonel William Byrd of streets in the town of Manchester to the public use, and that the dedication was accepted by the public and thus made perfect. It was accepted by the highest representative authority in the land — the legislature. Nor can there be any doubt or difficulty in the case as to the question of law in regard to the effect of the lapse of time and-adverse possession upon the public right. The only room for question, if any, is in regard to whether the locus in quo is a part of one of the dedicated streets; which was a question for the jury. There have been several recent decisions of this court upon the subject of dedication, *and also upon the subject of a street in a city being a public highway, and of the effect of an unlawful obstruction thereof. On the former subject, is the case of Harris v. The Commonwealth, 20 Gratt. 833, in which Judge Staples delivered the opinion of the court; and on the latter is the case of The City of Norfolk v. Chamberlain, in which Judge Christian delivered the opinion of the court, which is not yet reported, having been decided only a few days 'ago. See supra, 534. See also 2 Smith’s Leading Cases, p. 142, marg. 200, Dovaston v. Payne, and notes, English and American; Angel on Highways; City of Cincinnati v. The Lessee of White, 6 Peters’ R. 431; Commonwealth v. McDonald, 16 Serg. & R. 390; Penny Pot Landing v. City of Philadelphia, 16 Penn. St. R. 79; Mayo v. Murchie, supra; Ralston, &c., v. Miller, &c., 3 Rand 44; Kelly’s Case, 8 Gratt. 632.
Upon the whole, .we are of opinion that there is no error in the judgment of the court below, and that same ought to be affirmed.
Judgment affirmed.